NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 26, 2020[*]
Decided August 28, 2020

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-3491

| | |
|---|---|
| BEAUTY ENTERPRISES, INC., *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16-cv-2523 |
| SARA GREGORY, *Defendant-Appellant*. | Robert W. Gettleman, *Judge*. |

### O R D E R

Beauty Enterprises, a distributor, sued Sara Gregory, a market analyst in the beauty and personal care industry, for fraudulent misrepresentation and fraudulent concealment. Specifically, it alleged that Gregory made false statements about Carol's Express, a beauty-product brand, and that it purchased Carol's Express products in reliance on those statements. Beauty Enterprises further alleged that Gregory concealed

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

a trademark infringement claim against Carol's Express. After a bench trial, the district court entered judgment in favor of Beauty Enterprises. We affirm.

We recount the facts stipulated to in the joint pretrial order and as presented at trial. Gregory represented the Carol's Express product line for inclusion in a special program at CVS Pharmacy to feature hair and skincare products for African-American consumers. CVS suggested that Gregory use one of its vendors, Beauty Enterprises. On June 5, 2008, Gregory and Rocco Piccirillo, a Beauty Enterprises executive, discussed by phone Beauty Enterprises serving as Carol's Express's distributor for CVS's program. Beauty Enterprises thereafter entered into a contract with Carol's Express to buy its products for distribution. Over a month later, Gregory received a letter from Carol's Daughter, a manufacturer of high-end beauty products, instructing Carol's Express to cease and desist from use of its name and logo, which imitated that used by Carol's Daughter. But Carol's Express still shipped its products to Beauty Enterprises, which accepted them and paid about $80,000. Beauty Enterprises then distributed the products to CVS. Not until October did Gregory tell Beauty Enterprises that Carol's Daughter had sued Carol's Express for trade and service mark infringement. At that point, Beauty Enterprises recovered the Carol's Express products shipped to CVS, refunded CVS, and returned the products to Carol's Express. Carol's Express reimbursed Beauty Enterprises for some of its handling fees but did not reimburse the purchase price or shipping costs.

In 2012, having already obtained a default judgment against Carol's Express and Gregory's consulting company in a Connecticut court, Beauty Enterprises sued Sara Gregory personally in Illinois state court. Litigation proceeded until late 2015, when Beauty Enterprises, for an unknown reason, dropped the case after jury selection. Beauty Enterprises then filed this suit in federal court in February 2016. (Gregory refers to this lawsuit as having been "removed" from state court, but this is an original action.)

In her answer, Gregory demanded trial by jury, but her demand became less clear over time. For example, at a status hearing in October 2018, counsel for Beauty Enterprises asserted, "We don't think there's a jury demand," and the district court mistakenly agreed, saying, "Oh, there isn't. You know something, you're right." Counsel for Gregory did not correct the mistake. But when the bench trial began on September 10, 2019, Gregory's counsel began by objecting to the proceeding because Gregory had demanded a jury trial in her answer. The court overruled the objection, concluding that Gregory had waived a trial by jury. It reminded counsel that the signed

joint pretrial order was for a bench trial and that the court had said, "This is a bench trial," at a pretrial conference in March 2019 (to which counsel replied, "I understand.").

At the two-day bench trial, the parties gave conflicting testimony about the June 5, 2008, phone call. According to Piccirillo, Gregory said Carol's Express had the same owner (Lisa Price) as Carol's Daughter but operated as a separate entity because Carol's Daughter did not want to dilute its prestige by selling its products at retail stores like CVS. Piccirillo testified that he took notes during the call, so his counsel refreshed his recollection with those notes (and Piccirillo answered, "Yes" when asked if his memory had been refreshed). Over Gregory's objection, the district court allowed him to read the notes aloud as his recorded recollection pursuant to Federal Rule of Evidence 803(5). The notes contained a diagram with "Lisa" at the top-center. From there, a line pointed left to "Carol's Express" and a line pointed right to "Proven line Carol's Daughter." Below "Carol's Express" was "Sara," and below that were "CVS and Walmart." Below "Proven line Carol's Daughter" were the words "Ethan and Sephora."

Piccirillo also pointed to Gregory's follow-up email, in which she called Carol's Express the "retail expression of Carol's Daughter" and directed Piccirillo to "please visit www.CarolsDaughter.com." Gregory also described Carol's Daughter as the "department store counter-part" of Carol's Express. Piccirillo thought this meant that Price owned both brands; he provided examples of manufacturers spinning off a product line as the "retail expression" of a higher-end product. Although Gregory referred to Carol's Express as a "complete and separate entity," Piccirillo testified that he thought Price simply was operating the two businesses separately. Piccirillo testified that he relied on Gregory's representations because, after knowing her for around ten years in a business capacity, he admired and trusted her.

Gregory, on the other hand, testified that she did not discuss ownership of Carol's Express with Piccirillo at all. She denied telling Piccirillo that Carol's Express and Carol's Daughter were related or had the same owner. Further, she testified that she "never thought" that Carol's Express and Carol's Daughter were affiliated. She testified that the phrase "retail expression" was a common industry expression used to mean "similar to." When asked what she meant when she wrote, "[Carol's Express] functions as a complete and separate entity with corporate offices in New York," Gregory testified that she meant that "it was a different company." If the companies had been affiliated, Gregory testified, she would have "used the word 'owned.'"

Gregory also admitted receiving a cease-and-desist letter from Carol's Daughter on July 28, 2008, asserting that Carol's Express's trade dress was similar enough to

Carol's Daughter's to make consumers falsely believe the products were associated. The letter was addressed to Carol's Express, Donyale Bush (the owner of Carol's Express, who was also Gregory's stepson), and Gregory's company. Gregory's attorney responded to Carol's Daughter's counsel on August 11, 2008. A few days later, Gregory allowed Carol's Express to ship its products to Beauty Enterprises. Gregory stipulated that she did not inform Beauty Enterprises about the infringement claim until October 2008, when she told Piccirillo that, pursuant to a court order, Carol's Express's products should be recovered from CVS and destroyed.

After trial, the district court entered its findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1). The court concluded that Beauty Enterprises had proven both claims. Crediting Piccirillo's testimony over Gregory's, it found that Gregory had told Piccirillo that Carol's Express and Carol's Daughter had the same owner, even though Gregory knew this was false. Gregory's follow-up email, which stated that Carol's Express was the "retail expression" of its "department-store counterpart" Carol's Daughter, was also misleading; it falsely assured Beauty Enterprises that Carol's Express had permission to market its infringing products. And so, Gregory's false representations induced Beauty Enterprises to contract with Carol's Express. Beauty Enterprises' reliance was reasonable, the court further found; Piccirillo had no reason to doubt Gregory's statements because of her position and their past business relationship. The court also determined that Gregory had a duty to disclose the cease-and-desist letter, which would have allowed Beauty Enterprises to avoid losses. It entered a judgment of $118,518.09 in favor of Beauty Enterprises.

On appeal, Gregory (now representing herself) makes four arguments. First, she contends that she was improperly denied a trial by jury. But, given her counsel's statements and conduct at multiple pretrial conferences and assent to the jointly filed final pretrial order, the district court did not err in determining that Gregory waived her right to a jury trial. *See* FED. R. CIV. P. 38(d). Counsel's failure to object and overall course of conduct waived the jury demand in Gregory's answer. *See Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004).

Second, Gregory argues that her attorney provided ineffective assistance. Despite any purported errors by counsel (including waiving a jury trial), however, Gregory cannot attack the civil judgment against her in this way. There is no Sixth Amendment right to effective assistance of counsel in a civil case. *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001). The "exclusive remedy" for an unsatisfied client in a civil case "is a

suit for malpractice or for breach of fiduciary duty," *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 802 (7th Cir. 2000), though we do not opine whether there are grounds here.

Third, Gregory argues that Piccirillo's notes about the June 5, 2008, telephone conversation were inadmissible. Upon our review of the trial transcript, Gregory is correct: the district court elided the distinction between past recollection recorded, *see* FED. R. EVID. 803(5), and present recollection refreshed, *see* FED. R. EVID. 612. Specifically, when Piccirillo agreed that his recollection had been refreshed by the notes, the court erred by allowing Piccirillo to read directly from his notes. *See* 28 FED. PRAC. & PROC. EVID. § 6184 (2d ed.) (counsel should retrieve the writing after the witness's memory has been refreshed and before the witness testifies); *cf. United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997) (no error where admitted testimony stemmed from agent's personal knowledge and not from the written report used to refresh her recollection). Further, the court incorrectly applied the "recorded recollection" exception to the rule against hearsay to Piccirillo's notes. First, Piccirillo did not testify that he now could not recall the content of the notes well enough to testify about them fully and accurately (in fact, he said that his recollection *had* been refreshed). *See* FED. R. EVID. 803(5)(A). Second, although Piccirillo testified that the notes related to his phone call with Gregory, he did not explicitly state that the notes were accurate. *See* FED. R. EVID. 803(5)(C).

But in light of the rest of the evidence against Gregory, this evidentiary error was not prejudicial. *See* FED. R. CIV. P. 61. On the first day of the bench trial, without reference to notes, Piccirillo testified about the contents of the phone call, including Gregory's statement to him that Lisa Price was the common owner of Carol's Express and Carol's Daughter. Further, the evidence included, and Gregory does not challenge the admission of, the email in which Gregory called Carol's Express the "retail expression" of its "department store counter-part" Carol's Daughter.

Last, Gregory asserts that Beauty Enterprises "fail[ed] to mitigate damages," but this is a misnomer for her argument that Beauty Enterprises' reliance on Gregory's statements was unjustified because it did not independently investigate the ownership of Carol's Express. We review the district court's findings after a bench trial for clear error. FED. R. CIV. P. 52(a)(6); *Kreg Therapeutics, Inc. v. Vitalgo, Inc.*, 919 F.3d 405, 418 (7th Cir. 2019). The court did not clearly err in finding that Beauty Enterprises justifiably relied on Gregory's representations. Nothing put Piccirillo on notice that he should doubt the word of Carol's Express's marketing representative, who could be assumed to know who owned the brand, so the district court reasonably found that his reliance was justified. *See Benzakry v. Patel*, 77 N.E.3d 1116, 1129–30 (Ill. App. Ct. 2017). And

Gregory does not challenge the court's findings regarding her other statements implying an affiliation with Carol's Daughter.

AFFIRMED